**BERRYMAN v. NORFLEET et al.**
No. 3592.

Court of Civil Appeals of Texas. Amarillo.
April 22, 1931.

Rehearing Denied Sept. 9, 1931.

See also (Civ. App.) 25 S.W.(2d) 212.

Williams & Day, of Plainview, and Renfro, Ledbetter & McCombs, of Dallas, for appellant.

Joiner & Cook, of Plainview, for appellees.

JACKSON, J.

This suit was instituted by Mrs. M. E. Norfleet, joined by her husband, J. F. Norfleet, pro forma, as plaintiffs, in the district court of Hale county, Tex., against the defendant H. H. Berryman, to cancel a deed theretofore executed by the plaintiffs conveying their alleged homestead to the defendant and in the alternative to recover $13,000, the alleged value of said property, and $1,300 per annum for the use thereof.

The plaintiffs alleged that on December 22, 1924, and long prior thereto and at all times since they were husband and wife and on said date were occupying the 200 acres of land in controversy as their homestead.

That on September 9, 1924, they were the owners of sections Nos. 1, 3, 4, 5, 6, and 9, and the N. W. ¼ of section 7, and 440 acres out of section 2 in block D–10 in Hale county, Tex. That on said date the Texas Security Company held a deed of trust lien against the above-described land to secure the payment of $66,082.55. That on said date the Texas Security Company obtained a valid judgment against the plaintiffs for the sum of $74,347.77, principal, interest, costs, and attorney's fees, and a foreclosure of its lien against said land. That on November 3, 1924, the defendant contracted with the Texas Security Company for the purchase of said judgment and lien, and on the 19th of November, thereafter, consummated such contract of purchase and became the owner of said indebtedness and judgment. That on November 3, 1924, the defendant entered into a written contract with J. F. Norfleet by the terms of which he obligated himself to purchase all the above-described lands covered by said judgment lien and also the north 200 acres of section 2 in block D–10, the homestead of plaintiffs, and which was clear of all debts and incumbrances. That as a part of the consideration for plaintiffs' lands, the defendant contracted to convey to plaintiffs seven brick buildings clear of all liens, located in the town of Alto in Cherokee county, Tex., at an agreed value of $75,000, and further obligated himself in said contract to rent said buildings in Alto from plaintiffs for a period of two years, beginning January 1, 1925, at and for the price of $500 per month.

A copy of the contract between the defendant and J. F. Norfleet is attached to and made a part of plaintiffs' petition.

Plaintiffs also alleged that on December 22, 1924, the north 200 acres of said section 2 in block D–10, in addition to being the homestead of the Norfleets, was the separate property of the plaintiff M. E. Norfleet. That on said date the defendant knew that the judgment against the plaintiffs amounted to $74,347.77 and that the lien securing the payment thereof had been foreclosed against all of the above-described property save and except the 200 acres claimed and occupied by the plaintiffs as their homestead. That on said date the defendant induced M. E. Norfleet to join her husband in the execution of a deed conveying said 200 acres of land to the defendant, by falsely promising and fraudulently representing that if she would execute the deed with her husband he would carry out the provisions of the written contract, pay off and satisfy the judgment he had purchased against the incumbered land, and convey to plaintiffs the seven brick buildings in Alto, Tex., for which he would pay as rent per month the sum of $500 for a period of two years. That by reason of said false and fraudulent representations, the plaintiffs, and especially M. E. Norfleet, were induced to execute the deed to the homestead property. That as a matter of fact at the time the defendant acquired said judgment and contracted with J. F. Norfleet for the purchase of said lands and at the time he made the representations by which M. E. Norfleet and her husband were induced to convey to him their 200-acre homestead which was also the separate property of M. E. Norfleet, he did not intend to carry out said contracts nor the promises made to induce the plaintiffs to convey him their homestead, but all such agreements, contracts, and promises were fraudulently made and were a part of the scheme on the part of the defendant to fraudulently acquire plaintiffs' land and especially said 200 acres. That the plaintiffs relied and acted upon such agreements, promises, and representations in the execution of the deed to said homestead; that the defendant at the time of such representations had in mind and did, in fact, thereafter, have execution issued and levied on all of said encumbered property, had it advertised and sold, and on the 3d of March, 1925, purchased the same at sheriff's sale for the sum of $6,000 and secured a sheriff's deed thereto. That the defendant has failed and refused to convey to plaintiffs the seven brick buildings in Alto, Tex., and refused to pay plaintiff any money for the 200 acres of land acquired by the deed from plaintiffs. That by reason of the fraud perpetrated on the plaintiffs and especially M. E. Norfleet, she is entitled to a cancellation of the deed and a recovery of the title and possession of said 200 acres of land.

The plaintiffs alleged in the alternative that if the title to said 200 acres of land has been conveyed by the defendants to innocent purchasers or lienholders, that they are entitled to a money judgment against the defendant for the full value of said 200 acres

of land, which they alleged to be the sum of $13,000. They also alleged that the annual value for the use of said 200 acres since it was conveyed to the defendant is of the reasonable value of $1,300.

The defendant answered by general demurrer, numerous special exceptions, and general denial. He specially denies that he ever made any representations which he did not intend to perform, and alleges that he was at all times ready, willing, and able to comply with and perform every promise made by him to either of the plaintiffs and to perform all the obligations under the contract between him and J. F. Norfleet.

That by the terms of the contract J. F. Norfleet agreed to convey to the defendant all of said lands, including the 200-acre homestead involved in this controversy, at the price of $29.30 per acre. That at the time of said contract the 200 acres was the community property of J. F. Norfleet and his wife and they executed the deed, sought to be canceled, to this defendant, and if said 200 acres of land was the homestead, it was abandoned as such long before the institution of this suit, and the plaintiffs are estopped from recovering said land or any damages on account of any or all of said transactions complained of. That on November 9, 1925, the defendant and J. F. Norfleet made a complete settlement of all trades and agreements theretofore made, by the following contract:

"Dallas, Texas, November 9, 1925. $1750.00

"Received of H. H. Berryman the sum of $1,750.00 in full settlement of all amounts due me on any and all trades we have heretofore entered into, verbally or in writing, whether said trades have been consummated or not. This being a full receipt and release of H. H. Berryman.

"[Signed] J. F. Norfleet.
"Witness: M. C. Parrish."

The defendant pleads the statutes of two and four years' limitations. In the alternative the defendant alleges that if the court finds that plaintiffs have any equities arising out of the transactions pleaded, that the defendant likewise has equities which should be protected, and in this connection shows that by the contract with J. F. Norfleet, the defendant was to acquire 4,960 acres of land at $29.30 per acre. That the defendant was to pay $73,280 cash and convey the Alto property to J. F. Norfleet for the sum of $75,000. That J. F. Norfleet induced the defendant to purchase the judgment of the Texas Security Company to prevent a sheriff's sale and to assist the plaintiffs in carrying out the contract with the defendant. That at the request of J. F. Norfleet, the defendant paid the Securities Company $10,000 as a consideration for stopping the sheriff's sale and for an option to purchase the judgment and in acquiring said judgment expended the total sum of $74,347.77, with accrued interest thereon. That one of the purposes in purchasing the judgment and having it transferred to the defendant was to keep the debt and judgment lien therein in effect as a first and prior lien against the land so it might be sold under execution to eliminate subsequent and inferior liens which existed. That the defendant advanced other sums to the plaintiffs, all of which was for the use and benefit of the community estate and for the purpose of assisting in clearing the title to said lands so the plaintiffs could perform said contract and convey all of said lands, except section 5, to the defendant clear of incumbrances as the contract provided. That the defendant, in carrying out this understanding and for the purpose of assisting the plaintiffs, paid out the aggregate sum of $86,829.52. That the defendant acquired good title to but 3,721.9 acres covered by the contract, including the homestead, which at the agreed value was the sum of $109,051.67; hence, if plaintiffs had complied with their contract, after deducting the $75,000, the agreed value of the Alto property, from the agreed value of the acreage acquired by the defendant of $109,051.67, the defendant would have been required to have paid plaintiffs in money approximately $34,051.67. That such sum was due until the final settlement made between the defendant and J. F. Norfleet on November 9, 1925, and the plaintiffs were due the defendant, before the Alto property could be conveyed to them, $52,777.85. That if it is determined that there has been no final settlement, that he is ready, able, and willing to convey the Alto property to plaintiffs if they are required to do equity and within a reasonable time pay him said sum of $52,777.85 with interest thereon, the insurance, taxes, and repairs he has expended on the Alto property.

In reply to the defendant's answer, in a supplemental petition, the plaintiffs pleaded a general denial, and also alleged that the contract between J. F. Norfleet and the defendant dated November 9, 1925, had no reference to any settlement relative to the Alto property, but related to property in Sulphur Springs, Tex., which J. F. Norfleet alone had purchased, paying therefor in personal property and assuming certain indebtedness, which property was afterwards and on the date of the alleged settlement conveyed back in cancellation of the original contract for the purchase of the Sulphur Springs property. That the plaintiff M. E. Norfleet was not a party to the contract, either as originally made or at the time of its cancellation, and is not bound by any attempted settlement which in any way involves the 200 acres of land in controversy.

By supplemental answer the defendant excepted to the allegations in plaintiffs' supple-

mental petition relative to the settlement contract and pleaded a general denial.

In response to special issues submitted by the court in his main charge, the jury found, in substance, that the 200 acres of land in controversy was the homestead of the plaintiffs on December 22, 1924; that they had not abandoned said property as their homestead prior to the delivery of their deed to the defendant; that the defendant represented to Mrs. Norfleet at the time the deed to the 200 acres of land was signed that he would carry out the contract as made November 3, 1924; that the defendant did not intend at the time he made the representations to Mrs. Norfleet, to carry out the contract of date November 3, 1924; that since November 3. 1924, the defendant has not been ready, willing, and able to carry out the contract of date November 3, 1924; that prior to the delivery of the deed to the 200 acres of land to the defendant, the plaintiffs and the defendant did not know the written contract could not be carried out on the part of the plaintiffs; that at the time of the delivery of the deed to said 200 acres, Mrs. Norfleet did not know that there was so much against the land to be conveyed to the defendant that the plaintiffs could not carry out the contract as originally made; that Mrs. Norfleet, prior to the delivery of the deed to the 200 acres, knew and consented for the defendant to buy the judgment to stop the sheriff's sale and assist plaintiffs in carrying out their part of the contract; that Mrs. Norfleet knew that the defendant had bought the judgment prior to the time she delivered the deed to the 200 acres; that Mrs.. Norfleet knew that the property was to be sold under execution prior to the delivery of the deed to the 200 acres; that she agreed that the defendant Berryman might sell the land under execution on the judgment in order to foreclose against outstanding inferior liens on the land; that the defendant Berryman did not pay out any cash amounts in excess of the sum he contracted to pay in cash with the knowledge or understanding of the plaintiffs; that Mrs. Norfleet did not agree and consent that the defendant could retain the title to the Alto property until the plaintiffs had paid him the amounts, if any, the defendant had paid out in excess of the sums he had contracted to pay in cash under the contract of November 3, 1924; that the reasonable cash market value of the 200 acres of land in controversy is $13,000; that the annual rental value of said 200 acres of land is $1,300.

In response to special issues requested by the defendant and submitted by the court, the jury answered, in effect, that the defendant Berryman refused to perform his obligations under the contract of November 3, 1924; that Mrs. Norfleet did not agree that the 200 acres of land involved in the controversy should be part payment for the Sulphur Springs property; that the total amount of cash paid out by the defendant Berryman in the attempt to carry out the contract of November 3, 1924, is $86,829.52; that the defendant had expended for repairs on the Alto property since November 3, 1924, $2,000; that Mrs. Norfleet did not know that the sheriff's sale had been made before the deed to the 200-acre homestead was delivered to the defendant; that the deed from J. F. Norfleet to Mrs. M. E. Norfleet conveying the 200 acres of land in controversy was delivered to Mrs. Norfleet by J. F. Norfleet; that the settlement made between the defendant and J. F. Norfleet on the 9th of November, 1925, and the written agreement signed by J. F. Norfleet was not a settlement of all matters between them concerning the exchange of properties provided for in the contract of November 3, 1924.

In response to special issues submitted by the court at the request of the plaintiffs, the jury found, in substance, that at the time the plaintiffs deeded the 200 acres to H. H. Berryman, M. E. Norfleet believed and relied on the statements of the defendant that he would carry out the contract; that the receipt and release signed by J. F. Norfleet on November 9, 1925, was not intended by him to release the defendant from any obligations except that pertaining to the Sulphur Springs property; that Mrs. Norfleet did not, after the execution of the deed to the 200 acres on December 22, 1924, agree that said 200 acres should be applied on the purchase of the Sulphur Springs property.

The court finds as a fact that since the execution of the deed by plaintiffs, conveying the title to the 200 acres of land in controversy to the defendant, he has incumbered the title and permitted it to be incumbered to such an extent that the plaintiffs could not acquire title to said land free of incumbrances by a cancellation of the deed.

On these findings the court enters judgment for M. E. Norfleet against the defendant for the sum of $13,000, together with interest thereon at the rate of 6 per cent. per annum from March 3, 1925, and for costs. From this judgment the defendant prosecutes this appeal.

The appellant presents as error the action of the trial court in overruling his general demurrer and special exception to plaintiffs' petition because the representations alleged are not such false promises as constitute fraud.

The general and so-called special exception overruled by the court were, in effect, but general demurrers. Lee v. First National Bank (Tex. Civ. App.) 254 S. W. 394; P. & S. F. Ry. Co. v. Shell et al. (Tex. Civ. App.) 265 S. W. 758; Shaller v. Allen (Tex. Civ. App.) 278 S. W. 873. And all reasonable intendments will be indulged in favor of the

pleading. Stone et al. v. Day, 69 Tex. 13, 5 S. W. 642, 5 Am. St. Rep. 17; Cochran et al. v. People's National Bank (Tex. Civ. App.) 271 S. W. 433. The allegations of the appellees were, in our opinion, good as against such exceptions.

The appellant's assignment urging as error the action of the trial court in refusing to direct a verdict in his behalf because of the insufficiency of the testimony to present any issue for the determination of the jury, is overruled. Norfleet et al v. Berryman et al. (Tex. Civ. App.) 25 S.W.(2d) 212.

The appellant, by a proposition based on what he terms his supplemental assignments, urges as error the action of the trial court in rendering judgment against him because the jury did not find that M. E. Norfleet, the plaintiff, relied upon the false promises alleged in delivering the deed, nor that she would not have delivered the deed but for such false promises.

■ The record discloses that the court convened on the 22d of September, 1930, and adjourned on October 25, 1930, and on that day the appellant filed his motion for a new trial, which contains forty-four assignments of error. That on January 12, 1931, the defendant filed what he terms supplemental assignments of error, upon which this proposition is based. This assignment does not present fundamental error and is not entitled to consideration. Phillips Petroleum Co. v. Boles (Tex. Com. App.) 276 S. W. 667; Dallas Tailors' Supply Co. et al. v. Goen (Tex. Civ. App.) 25 S.W.(2d) 224; Sparks v. Saltillo Independent School District (Tex. Civ. App.) 19 S.W.(2d) 814; Baldwin v. Morton et al. (Tex. Civ. App.) 19 S.W.(2d) 948; Unique Illustrating Co. v. Withers et al. (Tex. Civ. App.) 33 S.W.(2d) 1074.

■ However, the record discloses that in response to a special issue requested by the plaintiffs, the jury expressly found that M. E. Norfleet believed and relied on the representations of Mr. Berryman that he would carry out his contract. Mrs. Norfleet testified without contradiction that she would not have executed the deed to the 200 acres of land if she had known that Mr. Berryman was not going to convey them the Alto property and pay them the $500 per month for the rental thereof, according to the contract. There being no evidence in the record to contradict this testimony, and many circumstances to corroborate her statement, it was not error to fail to submit such issue to the jury. Wintz v. Morrison, 17 Tex. 372, 388, 67 Am. Dec. 658; Denham v. Trinity County Lumber Co., 73 Tex. 78, 11 S. W. 151; Lamar v. P. & S. F. Ry. Co. (Tex. Com. App.) 248 S. W. 34.

■ If the issues submitted did not contain all the necessary elements, they contained some of the indispensable elements authorizing the plaintiffs' recovery for fraud, and where one or more of the necessary elements are submitted, the burden was on the appellant, if he desired a more complete submission, to either object thereto or request a further special issue. McDaniel et ux. v. Orr (Tex. Com. App.) 30 S.W.(2d) 489.

The appellant's contention that the use of the word "deeded" in the issue requested by the plaintiffs and given by the court constitutes reversible error, is not tenable in view of this record and the other findings of the jury.

Appellant, by several assignments, challenges the sufficiency of the testimony to support the findings of the jury to the effect that the appellant was guilty of fraud and in substance that the appellees had not abandoned their homestead.

Without setting out the testimony in detail, it is our opinion that the testimony was sufficient to authorize the finding of the jury on these issues.

■ The appellant, by proper assignment, attacks the sufficiency of the testimony to support the finding of the jury that he refused to perform his obligations under the contract.

It will be noted that this issue was submitted by the court at the appellant's request, and having himself sought a finding of the jury on this issue, he cannot be heard to complain. Farmers' Life Insurance Co. v. Wolters et al. (Tex. Com. App.) 14 S.W.(2d) 58; Shaw v. Shaw (Tex. Civ. App.) 28 S.W.(2d) 173.

The appellant urges as error the action of the trial court in admitting, over his objection, the oral testimony of J. F. Norfleet that the instrument signed by him in the Jefferson Hotel on November 9, 1925, had reference only to the Sulphur Springs property, because such testimony varied the terms of the written instrument and violated the parol evidence rule.

■■ The testimony discloses that at the time the deed to the 200-acre homestead was executed by M. E. Norfleet and her husband, with the knowledge and approval of the appellant J. F. Norfleet executed and delivered to her a deed to said 200 acres of land. This constituted the 200 acres of land the separate property of Mrs. Norfleet, and inasmuch as the property was their homestead, the conveyance in no way constituted a fraud on appellant or any other of the creditors of appellees.

■ The testimony is uncontroverted that Mrs. Norfleet was not present and knew nothing of the execution of the instrument termed a receipt and release, dated November 9, 1925. There is no testimony that J. F. Norfleet was acting as her agent and no testimony that the contract was made for the

benefit of her separate estate. The declarations of the husband made in the absence of the wife cannot prejudice her rights to her separate property. Speer on Married Women, § 378; Ann Ross v. Emma Kornrumpf, 64 Tex. 391; Clapp v. Engledow et al., 82 Tex. 290, 18 S. W. 146; Qualls v. Fowler et al. (Tex. Civ. App.) 186 S. W. 256, 257.

If this instrument was such a written contract as the consideration therefor could not be shown by parol evidence, Mrs. Norfleet was not a party to such contract and the parol evidence rule could not be invoked against her. "The rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract. A stranger to such written instrument is not bound by its terms and therefore he cannot hold other parties bound by the same." Bagley v. Pollock (Tex. Civ. App.) 19 S.W.(2d) 193, 195 and authorities cited. See, also, Long Bell Lumber Co. v. Futch (Tex. Civ. App.) 20 S.W.(2d) 1076.

■The appellant's assignment challenging as error the refusal of the court to submit his requested special issue as to whether the plaintiffs, or the plaintiff J. F. Norfleet, breached the contract between himself and appellant, or was unwilling or unable to perform the obligations or any of them therein contained, is overruled. The issue as requested is duplicitous, and a finding thereon, in view of the other issues found against appellant, would not have been a defense to the cause of action urged by Mrs. Norfleet.

A copy of the contract entered into between J. F. Norfleet and the appellant is attached to and made a part of appellees' petition and the terms and provisions thereof, so far as necessary to a disposition of this appeal, are set out in the case of Berryman v. Flake (Tex. Civ. App.) 20 S.W.(2d) 803, to which we refer to avoid a restatement thereof.

The testimony shows without controversy that the unimproved land obtained by appellant under the sheriff's deed had a market value of $30 to $35 per acre. The appellant testified that the sheriff's deed discloses the number of acres he obtained at the sheriff's sale. The sheriff in his deed conveyed to appellant 3,656.36 acres of land. At the contract price therefor, $29.30 per acre, the appellant received, independent of the 200 acres and independent of the half section belonging to Flake, land valued at $107,331.34. The jury found, in answer to a special issue requested by appellant, that the appellant had paid out $86,829.52 in acquiring the 3,656.36 acres of land by the sheriff's deed. None of this money was paid out on the 200 acres of land involved in this controversy. These facts are in the record without contradiction.

■ The findings of the jury that the 200 acres of land involved in the controversy is of the market value of $13,000, that appellant had refused to carry out the contract of November 3, 1924, and the record revealing the fact that the cancellation of the deed from appellee and her husband to the appellant of the 200 acres of land would not vest title in her because of the incumbrances placed against it by the appellant, entitled her to recover the $13,000.

■ The appellee sued in the alternative to recover the value of the land in controversy, alleged to be $13,000, and the annual rental thereof alleged to be $1,300. The jury found both of these issues in her favor, but the court rendered judgment that she recover $13,000 with 6 per cent. interest thereon from March 3, 1925. There is no prayer for interest on the amount of recovery, and the appellant's contention that the court committed error in allowing interest on the $13,000 from March 3, 1925, is sustained. Brooks Supply Co. v. Bank (Tex. Civ. App.) 292 S. W. 631.

Appellee filed no cross-assignment to the action of the court in refusing to enter judgment for her for the value found by the jury as the use of her property. Hence, the judgment is here reformed, allowing appellee to recover the sum of $13,000, with 6 per cent. interest thereon from the date of the judgment in the trial court, and as so reformed, is affirmed.