HAUSER et al. v. ZOOK.     (No. 7472.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 23, 1925. Rehearing Denied Jan. 13, 1926.)

1. Frauds, statute of ⊙⇒75 — Parol contract held within statute of frauds.

Where plaintiffs cared for aged lady, on parol understanding that they would receive her property at her death, but did not have exclusive possession prior to her death, contract was within statute; there being no present sale followed by delivery of possession.

2. Frauds, statute of ⊙⇒129(7)—Improvement should be in proportion to value of property claimed under oral agreement.

To sustain parol sale of land, improvements should be in reasonable proportion to value of land.

3. Landlord and tenant ⊙⇒61—Payment of rent was adverse to claim of ownership under parol agreement.

Where plaintiffs claimed ownership of land under parol agreement that it was to be theirs if they cared for owner until her death, payment of rents as such was in sharp conflict with, and adverse to, claim of ownership.

4. Contracts ⊙⇒352(1)—Where no dispute as to material facts, court properly took case from jury.

Where plaintiffs claimed land under oral agreement with owner, whereby they were to get property if they cared for such owner till death, and there was no substantial dispute on material facts, court did not err in refusing to submit case to jury.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Emma Hauser and others against D. H. Zook, administrator. Judgment for defendant, and plaintiffs appeal. Affirmed.

T. H. Ridgeway, of San Antonio, for appellants.

H. S. Groesbeeck, of San Antonio, for appellee.

COBBS, J. Appellants sued appellee to recover title to lot 6, city block 275, situated at No. 213 Vera Cruz street, in the city of San Antonio, Bexar county, Tex. The suit is based upon an alleged contract and agreement to convey and give land in the future. The verbal contract was:

Mrs. Hauser testified that they moved into the house with Mr. and Mrs. Payne about 18 years ago (18 years before the trial), and that Mr. Payne was 91 years old and totally blind when he died in 1912. She further testified: "Mr. and Mrs. Payne had no children, and no one living with them from the time we moved in with them up to the time of their deaths; they had no relatives that I know of." She again testified on cross-examination: "I said she had no relatives that I know of." Mrs. Hauser testified that Mrs. Payne had $250 in the bank at the time she was conveyed to the asylum. She was taken to the asylum on March 31, and died on June 10, 1924. She received a pension of $30 per month. It was admitted that said $250 was in the bank when Mr. Zook took charge as guardian of Mrs. Payne's estate after she went to the asylum. It appears from Mrs. Hauser's testimony that all of Mrs. Payne's expenses were paid.

Mrs. Hauser testified:

"Mrs. Payne always said: 'Stay with me, take care of me, and the place is yours.' She begged us to stay, yes. That was my part in the con-

tract we made in 1912. We never told her we were going to leave, but it was natural for her to get these demented feelings and fearing we might go; that is what I had to contend with —never let her know that I felt like I was having too much to contend with, though I often felt like running away to the asylum myself— I am under treatment for a nervous breakdown, yes, sir; I am."

Jacob Hauser testified:

That he and his wife moved into the house with Amaziah Payne and his wife, Margaret Payne, about 18 years prior to the trial. "That Amaziah Payne died during the year 1912 at the age of 92 years. Mr. Payne called me to his bed and told me to take care of his wife, Margaret, and we should stay there in the house, and that the house and property would be ours to take care of his wife. I told him we would. Before his death, Mr. Payne was blind. He was blind when we moved in there. After the conversation above referred to about the property, he lived only a few days. Mrs. Payne was present at the time of that conversation. After Mr. Payne's death, I had a conversation with Mrs. Payne with reference to the property—that was about two or three months after Mr. Payne's death. She said the place was ours, and I should repair it, all little things what is to be repaired."

Mrs. Payne then had a long sick spell, and Mrs. Hauser nursed and cared for her. Mr. Hauser further testified:

"After that I discussed with her the question of the property, every time I went to fix something, I would ask her, she always told me, 'Do what you want, the property is yours.'"

He then testified as to repairs placed by him upon the property, and then testified:

"In 1913 I told her something should be fixed, some window panes. She says, 'Go ahead, fix it, the property belongs to you.'"

Mrs. Emma Hauser testified that the next day after Mr. Payne's funeral Mrs. Payne asked her to stay with her, that she was very feeble, and that after her death the place would be ours. She testified to another conversation in 1920, in which Mrs. Payne said:

"I am getting very old and feeble; you take care of me and the place is yours. I told her we would take care of her."

She then testified to the manner in which she cared for Mrs. Payne up to the time she was taken to the insane asylum in 1924.

Jake Rubiola testified that he was well acquainted with Mrs. Payne during her life time, and that Mrs. Payne told him repeatedly that she wanted Mrs. Hauser to have the property because Mrs. Hauser had taken care of her.

Dr. Berry, who was the attending physician for Mrs. Payne for a number of years, testified on several occasions Mrs. Payne told him that she wished to give the property to Mrs. Hauser on account of her having been such a good friend, and had served her for so many years.

We adopt appellants' statement:

"In all of the decisions and text-books, where the rule is stated (as is the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1116, 15 A. L. R. 216), there are four recognized elements, a combination of the first three of which or the fourth standing alone will take a parol sale or gift of real estate out of the statutes of fraud: (1) Payment of the consideration; (2) possession by the vendee or donee; (3) valuable improvements; or (4) the presence of such facts as would make the transaction a fraud upon the purchaser or donee if the contract were not enforced."

[1] But there is one more essential, not mentioned by appellants, that strikes at the very foundation of the claim necessary to take such parol contracts out of the statute of frauds, and that is there must be a present sale followed by the delivery of possession. The testimony presents a sale not in præsenti, but one to take place on the performance of the contract. In other words, they were to receive no land unless they cared for the parties during the remainder of their lives, whereupon the property was to become the property of the appellants. At most this scarcely arose to the dignity of an executory contract. It was not a gift or sale in præsenti. The pleading and the testimony showed that appellants paid rent in lieu of support and maintenance, and in making improvements or other expenditures the owner was consulted. There was not shown by any testimony an exclusive possession, but one contemporaneous with that of the true owner. They were living on the place, and the most that can be said is that it was joint, and had more the appearance of landlord and tenant.

It may be, and the testimony shows, that the owners desired to give the property to appellants, but they did not do so prior to their death, and we are not permitted to execute such a deed for them. It was a mere conditional, verbal promise to convey land in futuro, such as is condemned by the statute of frauds, and therefore nonenforceable. Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1116, 15 A. L. R. 216; Altgelt v. Escalara, 51 Tex. Civ. App. 108, 110 S. W. 991.

[2] For a period of more than 12 years the amount spent for improvements did not exceed $75. Improvements in such contracts should be in reasonable proportion to the value of the land. Wisdom v. Peck (Tex. Civ. App.) 220 S. W. 210; Rosek v. Kotzur (Tex. Civ. App.) 267 S. W. 759; Altgelt v. Escalara, supra; Reyes v. Escalero (Tex. Civ. App.) 131 S. W. 627; Hooks v. Bridgewater, supra; Davis v. Portwood, 20 Tex. Civ. App. 548, 50 S. W. 615; Texas Pacific v. Hamil (Tex. Civ. App.) 238 S. W. 681.

[3] The payment of rents as such and as done here is in sharp conflict with, and ad-

verse to, the claim of ownership. Casey v. Hanrick, 69 Tex. 44, 6 S. W. 405; McKie v. Anderson, 78 Tex. 207, 14 S. W. 576.

[4] We have considered the claim that the cause should have gone to the jury, but when, as in this cause, there is no issue for the jury to find the court did not err. We have given special consideration to appellants' own pleading and testimony, and find no substantial dispute of very material facts in the record.

The case was fairly tried, and there is no error assigned that requires a reversal of this case, and the judgment of the trial court is affirmed.