### BEVIL et al. v. KIRBY LUMBER CO.
### No. 2325.

Court of Civil Appeals of Texas. Beaumont.
March 30, 1933.

Rehearing Denied April 5, 1933.

Renfro & Keen, of Beaumont, and J. T. Beaty, of Jasper, for appellants.

A. M. Huffman, of Beaumont, and Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

O'QUINN, Justice.

Appellants, J. R. Bevil and Mrs. J. B. Price, a feme sole, brought this suit against the Kirby Lumber Company, claiming to be the owners of T. & N. O. section No. 56 of land in Jasper county, Tex., and to restrain said company from cutting timber on said land. The injunction was granted. The Kirby Lumber Company at the time was engaged in the cutting of the timber.

Kirby Lumber Company answered and filed a cross-action for damages for wrongfully suing out the injunction, and also filed cross-action against the Peavy-Moore Lumber Company on its warranty.

The case was tried to a jury upon special issues, upon the answers to which the court rendered judgment that the injunction be denied and that appellants take nothing as damages; that appellee recover of appellants and the sureties on their injunction bond damages in the sum of $915; that appellee pay to appellants the sum of $146, said sum being for taxes on said property for the year 1927; and that appellee have the period of one year from the date of final judgment herein for cutting and removing the timber on said land; and that appellee take nothing by virtue of its suit against the Peavy-Moore Lumber Company on its warranty.

Motion for a new trial was overruled, and the case is before us on appeal.

The Miller-Link Lumber Company formerly owned the land and timber comprising T. & N. O. section No. 56. The receivers of said company, on November 7, 1923, by deed, conveyed the pine timber 8 inches in diameter and upwards on said section of land to the Peavy-Moore Lumber Company. This timber deed, among other things, provided:

"It is expressly agreed and understood that said Peavy-Moore Lumber Company, Inc., its successors and assigns shall have the full period of five years from the date hereof within which to cut and remove said timber from said land. In the event said timber is not removed within said period of five years said Peavy-Moore Lumber Company, Inc., shall have as much of an additional period of time not exceeding three years as may be necessary to cut and remove the timber from said land. Provided, however, that when the land has been once cut or logging operations thereon once abandoned, all rights of the Peavy-Moore Lumber Company, Inc., to cut and remove said timber shall cease and terminate.

"The Peavy-Moore Lumber Company, Inc., covenants and agrees as a further consideration for the timber rights hereby conveyed that during said period of eight years it will promptly pay to the Receivers of the Miller-Link Lumber Company, their successors or assigns, on January 1st of each year, all taxes on said land and said timber for the preceding calendar year, provided, however, it shall not be liable for taxes for the years succeeding the year in which it shall have completed the removal of said timber."

By deed of date January 15, 1926, the receivers of the Miller-Link Lumber Company sold to the Peavy-Moore Lumber Company all the merchantable hardwood timber on said T. & N. O. section 56 of land. This deed provided:

"It is expressly agreed and understood that the Peavy-Moore Lumber Company, Inc., its successors and assigns, shall have until the 7th day of November, A. D. 1928, within which to cut and remove said timber from said land, and in the event said timber is not cut and removed by said date, then, in that event, said Peavy-Moore Lumber Company, Inc., shall have as much of an additional period of time, not exceeding three years, as may be necessary to cut and remove the timber hereby conveyed from said land, by paying all taxes properly assessed against said T. & N. O. Section 56 for each year from date, to and including the year in which said hardwood timber is cut and removed. And when the hardwood timber has been once cut, or logging operations thereon for hardwood timber once abandoned, all rights of the Peavy-Moore Lumber Company, Inc., to cut and remove hardwood timber from said land shall cease and terminate, and all hardwood timber then remaining on said land shall revert to and become the property of grantors herein."

March 16, 1926, the Kirby Lumber Company and the Peavy-Moore Lumber Company entered into an exchange of timber contract whereby the Kirby Lumber Company acquired all the rights of the Peavy-Moore Lumber Company in and to the timber here involved. This contract contained mutual warranties of title to the timber exchanged.

By deed dated January 31, 1928, the receivers and the special master commissioner of the Miller-Link Lumber Company conveyed to B. E. Quinn, J. Bain Price, and J. R. Bevil, Sr., among other tracts of land, T. & N. O. section 56. Quinn conveyed his interest to Bevil.

The title to the land is not involved. The cavil relates entirely to the timber. As set out above, in quoting from the timber deeds from the receivers of the Miller-Link Lumber Company to the Peavy-Moore Lumber

Company, the five years given for removal of the timber would have expired on November 7, 1928. The timber not having been removed within that time, the extension of time provided in the conveyance, three years, would have expired November 7, 1931. The record shows that Kirby Lumber Company, about September 3, 1931, entered upon the land and was cutting and removing timber therefrom. This suit was filed and the cutting and removal of the timber stopped by injunction on September 4, 1931.

 Appellants' seventh proposition is based on ten assignments of error, and in effect urges that the court erred in not submitting to the jury the issue of abandonment by appellee of the cutting of the timber on said land. The timber deeds, as shown above, provide that, when the land has been once cut or logging operations thereon once abandoned, all rights to cut and remove the timber shall terminate. In 1927 or 1928 Kirby Lumber Company entered upon the land and cut the timber on about 400 acres of the 640-acre tract. The timber was cut on the east side of the tract. There was a slough extending practically north and south through the tract, and the land west of the slough was swampy. Most of the time the slough and swampy lands were so filled with water and boggy as to be impossible to log through unless a tramroad was built across it. The slough was about a quarter of a mile wide, and the cost of building a tram over it would have been very considerable. When the timber was cut up to the slough, the cutting of the timber was stopped. The jury found that 300,000 feet of pine and 240,000 feet of hardwood timber were on the uncut land. On about September 3, 1931, the lumber company, having cut roads and prepared to log the timber west of the slough, began cutting and removing the timber by means of trucks entering from the west side around the slough, when this suit was filed and the removal of the timber stopped by injunction, this on the theory that under the terms of the timber deed, when the land had been once cut or logging operations thereon once abandoned, all rights to cut and remove the timber terminated, and that, as logging operations had ceased from in 1928 up to September, 1931, all rights to cut and remove the timber had ceased to exist, and the timber had reverted to appellants as owners of the land. The facts being without dispute as to the timber deeds, the partial cutting of the timber, and there being some 200 or more acres of the land upon which the timber had not been cut, the existence of the slough on the land, and the reason cutting in 1928 had stopped, we do not think any question of disputed fact appeared to form an issue of abandonment to be submitted to the jury, and therefore the court did not err in failing or refusing to submit such issue to the jury. The timber deeds gave the purchaser of the timber eight years in which to cut and remove the timber. That time had not elapsed when cutting was resumed in September, 1931, but had more than two months to run. The timber deeds did not require that all of the timber should be cut at one continuous cutting. There was no attempt to again cut over the land which had been once cut, when cutting was stopped by reason of the slough and surface conditions. The resumption of cutting was only to finish cutting over the tract—the land on the west side of the slough. When all of the undisputed facts are considered in connection with the terms of the timber deeds, we think it clearly appears, as a matter of law, that appellee had not abandoned the cutting of the timber. Cammack v. R-L Lmbr. Co. (Tex. Civ. App.) 258 S. W. 488 (writ refused); Smith v. Jasper County Lmbr. Co. (Tex. Civ. App.) 46 S.W.(2d) 430; Broocks v. Moss (Tex. Civ. App.) 175 S. W. 791. The assignments are overruled.

 It is also contended that appellee had forfeited its right to cut and remove the timber because it had not complied with the terms of the timber deeds which obligated the purchaser of the timber to promptly pay, on January 1st of each year, all taxes on the land and timber during the life of the removal of timber period.

The timber deed conveying the pine timber, provided: "The Peavy-Moore Lumber Company, Inc., covenants and agrees as a further consideration for the timber rights hereby conveyed that during said period of eight years it will promptly pay to the Receivers of the Miller-Link Lumber Company, their successors or assigns, on January 1st of each year, all taxes on said land and said timber for the preceding calendar year, provided, however, it shall not be liable for taxes for the years succeeding the year in which it shall have completed the removal of said timber."

The deed conveying the hardwood timber, provided: "It is expressly agreed and understood that the Peavy-Moore Lumber Company, Inc., its successors and assigns, shall have until the 7th day of November, A. D. 1928, within which to cut and remove said timber from said land, and in the event said timber is not cut and removed by said date, then, in that event, said Peavy-Moore Lumber Company, Inc., shall have as much of an additional period of time, not exceeding three years, as may be necessary to cut and remove the timber hereby conveyed from said land, by paying all taxes properly assessed against said T. & N. O. Section 56 for each year from date, to and including the year in which said hardwood timber is cut and removed."

The provisions in these deeds relating to the payment of taxes are in effect the same.

The one is no more onerous, that is, does not impose a greater obligation on the purchaser of the timber, than the other. The taxes were not paid promptly on January 1, 1928, for the year 1927. January 31, 1928, appellants, together with B. E. Quinn, purchased the land, T. & N. O. section 56. At that time the taxes for 1927 had not been paid, and same were paid by appellants, and it was then claimed and is now urged that, by reason of the failure to pay the taxes as stipulated in the timber deeds, the right to remove the timber was forfeited. As soon as it was made known to appellee that it was being contended that the failure to pay the taxes for 1927 had caused a forfeiture of the right to cut and remove the timber, both the Kirby Lumber Company and its grantor, the Peavy-Moore Lumber Company, at once tendered the amount of the taxes, $146, in gold to appellants, and they refused to accept same. Thereafter the taxes were paid by appellee direct to the tax collector for each and every year. While it is true the payment of the taxes is made a part of the consideration for the conveyance of the timber in each of the timber deeds, still it is clear, we think, that the provision for the payment of the taxes was a covenant and not a ground of forfeiture. If it had been the intention of the parties to the timber sale to make the payment of taxes so important as, in the event of failure to pay, to make same forfeit the right to cut and remove the timber, why did they not so express the intent in plain language? There being nothing technical or difficult in so wording such an intent, its being omitted, we think, is clear proof of the lack of any such intent. South' Texas Telephone Co. v. Huntington, 104 Tex. 354, 136 S. W. 1053, 138 S. W. 381; Chicago, T. & M. C. Railway Co. v. Titterington, 84 Tex. 222, 19 S. W. 472, 31 Am. St. Rep. 39.

Appellants' contention that the court committed reversible error in permitting the witness H. M. Seaman, land and tax commissioner of appellee, and Lee Weathersby, logging superintendent of appellee, to testify that, at the time cutting and logging operations on the land were stopped in 1928, it was not the intention of appellee to abandon the cutting of timber on the west side of the slough, is overruled. The objection to the evidence was that it was the opinion only of the witnesses, and so inadmissible. The abandonment of an undertaking frequently is as much a matter of intention as it is of outward acts, and, where such is the case, a witness may state his intention as a fact. Millerman v. Walton (Tex. Civ. App.) 278 S. W. 483. A corporation can act only by and through its officers and agents, and so such officers and agents may testify as to their intent in acting for the corporation in such capacity as to bind the corporation.

Fox v. Robbins (Tex. Civ. App.) 70 S. W. 597 (writ refused); Robertson v. Gourley, 84 Tex. 575, 19 S. W. 1006.

Other assignments of error are presented complaining of both the admission and rejection of testimony. We think some of the rulings complained of were error, but as they relate in the main to the question of abandonment by appellee of the right to cut and remove the timber, which question has been fully discussed, and as we have held, as a matter of law, no abandonment was shown, the matters of the rejection or admission of the evidence urged become and are immaterial, and no reversible error is shown.

It is complained that the court's judgment giving an extension of one year after final judgment herein in which appellee may remove the timber, is reversible error, because, appellants say: "There was no evidence to sustain such holding and no issue before the jury to warrant such holding, and the court had refused to submit an issue to the jury for a finding on this issue, and that such issue was a proper issue for the jury to decide."

Appellee, in its answer, alleged: "That the issuance of this injunction and the restraining of this defendant from cutting the timber covered by the above mentioned deeds prior to the expiration of its time limit amounts to a deprivation of this defendant of its property and such time limit should be extended, after such injunction is dissolved, for a reasonable period after the dissolution of said injunction and after the termination of this suit for a reasonable time to permit the cutting and removal of such timber. * * *"

Appellee prayed for an extension of time in which to cut and remove the timber, and for general relief.

The undisputed proof shows that appellee was the owner of the timber in question; that it had until November 7, 1931, in which to cut and remove same; that about September 3, 1931, it was upon the land cutting the timber; that on September 4, 1931, it was stopped by an injunction sued out by appellants from cutting the timber because, as asserted by them, of appellee's having forfeited and abandoned same. At the time of the institution of this suit, appellee's mill in the vicinity of the timber was in operation. After the injunction stopped the cutting of the timber, because of the unsatisfactory condition of the lumber market, operations were suspended and the mill shut down. When the injunction stopped the cutting of the timber, appellee had a few days more than two months—September 4th to November 7th —in which to remove the timber. At the end of that time, appellee's right to cut the tim-

ber would have, by the terms of the contract, terminated. On this date, March 16, 1933, the litigation commenced by appellants as to the ownership of said timber is still pending, and the end of such litigation is not in sight. The time limit for the removal of the timber has long since expired. The delay in cutting the timber was caused by the acts of appellants. It was testified that, in view of all the facts and circumstances, one year after final judgment would be a reasonable time for the removal of the timber. There was no evidence offered to show the contrary. The question of a reasonable extension of time for the removal of the timber was one of fact. The issue was raised by the pleadings and the evidence. Appellee requested a special issue as to what would be a reasonable time after final judgment in which to cut and remove the timber. This was refused by the court, but in its judgment the court granted an extension of one year. It is insisted that, the question being one of fact, and such issue of fact being raised by the pleading and proof, the court was not authorized to make such finding nor to render such judgment. It is believed that this contention is not sound for two reasons:

(a) Article 2185, R. S. 1925, provides that, in the trial of cases to a jury upon special issues, the court shall submit to the jury only controverted questions of fact. Where the facts are without dispute, as they are here on this issue, there was nothing to submit to the jury, and the court could render judgment on same, and this though a special issue had been requested and refused. Hauser v. Zook (Tex. Civ. App.) 278 S. W. 518; Ewing v. Foley, 115 Tex. 222, 280 S. W. 499, 503, 44 A. L. R. 627; see Notes of Decisions, Subdivision 9, p. 190, under article 2185, vol. 6, Vernon's Ann. Tex. Stat.

(b) Article 2190, R. S. 1925, in part reads: "Upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding."

The issue as to what would be a reasonable time, after final judgment, in which to remove the timber, was not submitted. It was requested to be submitted by appellee, but was refused. Its submission was not requested by appellants, nor was the charge objected to by them because of the omission to submit said issue. It is not believed that the refusal to submit appellee's requested issue is a matter of which appellants can complain. In so far as it affects their rights, it is the same as if no such issue was requested to be submitted, and so was properly found by the court; there being evidence to support such finding.

Other assignments are presented, and all of them have been considered. None of them show error, and are therefore overruled.

The judgment should be affirmed and it is so ordered.

Affirmed.