**THORNTON v. CENTRAL LOAN CO. et al.**

**No. 9110.**

Court of Civil Appeals of Texas. Austin.

July 1, 1942.

Rehearing Denied Sept. 9, 1942.

Wm. E. Davenport, of San Angelo, for appellant.

Collins, Jackson, Snodgrass & Blanks, of San Angelo, for appellee.

BLAIR, Justice.

Appellant, A. C. Thornton, sued appellees, Central National Bank of San Angelo, as administrator of the estate of E. E. Thornton, deceased, and Central Loan Company, in trespass to try title to 198 acres of land herein described as Block 36, in Tom Green County; and from an instructed verdict and an adverse judgment brings this appeal.

E. E. Thornton and Vinnie O. Thornton were husband and wife, and appellant was their only child. The wife died in September, 1931, leaving a will which was duly probated, and which devised all her property to her husband; the inventory showing Block 36 as community property. E. E. Thornton died in 1934, intestate, and appellant was appointed temporary administrator of his estate, and the inventory listed Block 36 as belonging to E. E. Thornton's estate. Later appellee Central National Bank was made permanent administrator of the E. E. Thornton estate.

The claim of appellee Central Loan Company was upon a note and deed of trust lien on Block 36, executed by E. E. Thornton after his wife's death, dated in December, 1931, and renewed in 1933, which claim was duly filed with and approved by the administrator, and duly approved and allowed as a secured claim by the County Court in which the administration proceedings were pending. Neither the claim nor lien was protested, nor was there any appeal from the final order approving and allowing them.

Appellant specially plead his title as follows:

1. That he and his father purchased the land in 1914 with partnership funds, one-third of which belonged to appellant and two-thirds to the father, and that the legal title was taken in the father's name in trust as to the interest of appellant.

2. That during the lifetime of the father and mother they made a parol gift of their interest in the land to appellant prior to the execution of the purported lien under which appellees claim; and that acting under the parol gift and while in possession appellant made valuable and permanent improvements on the land.

Further, as against the claim of appellees as to the validity of the note and lien, appellant alleged that at the time E. E. Thornton executed the purported note and lien under which appellees claim, he was mentally incapable of understanding the nature and result of the act.

The only attack made by appellant upon the note and lien, which he sought to establish by proof, was that E. E. Thornton was mentally incapable of executing them at the time of their execution. If he were mentally incapacitated at the time he executed the note and lien to appellee Central Loan Company, such note and lien were only voidable and not void. Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221. This being true the order of the probate court approving and allowing the claim of appellee Central Loan Company as secured by a valid lien on Block 36, was a final judgment under our statute and decisions, and the only remedy against it was by appeal therefrom. Jones v. Wynne, 133 Tex. 436, 129 S.W.2d 279; Art. 3525, R.S.1925. And since the probate court approved the claim and lien of Central Loan Company against the estate of E. E. Thornton, deceased, as a secured claim, and since no appeal was taken from that order, appellant cannot in this collateral proceeding attack or set aside the judgment of the probate court approving and allowing said claim and lien.

Appellant further alleged in this connection that immediately after purchasing the land in 1914 with partnership funds, he and his father moved with their respective families on the land in suit and have continuously used and occupied it as homestead property; and that the order or judgment of the probate court approving and allowing the claim of appellees on the

note and lien against the homestead is not immune from collateral attack because the probate court had no jurisdiction over the homestead. Appellant makes the same contention here, citing the case of Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916, as authority for the contention. This contention is not sustained because the only claim of homestead involved in the probate proceeding was that of E. E. Thornton, and he had no such claim as against the note and lien executed by him against the homestead after the death of his wife, there being no other constituent member of the family left after the death of the wife. That is, the constitutional limitation of the power to mortgage a homestead does not apply to a widower, Vernon's Ann.St.Const. art. 16, § 50. Lacy v. Rollins, 74 Tex. 566, 12 S.W. 314; Watts v. Miller, 76 Tex. 13, 13 S.W. 16.

■ The trial court correctly held that the homestead claim of appellant in the land in controversy depended upon whether he showed such a title or interest in the land as would sustain the homestead claim against the claim of appellees on the note and lien. As to this issue we agree with the conclusion of the trial court that the evidence was insufficient as a matter of law to show notice to appellee Central Loan Company at the time E. E. Thornton executed the note and lien to it of the secret title or interest claimed by appellant in the land either under the equitable partnership claim or under the alleged parol gift of the land by the father and mother to appellant. The evidence was conclusive that the alleged parol gift of the land was invalid as being violative of the statute of frauds, and under the undisputed evidence appellant was estopped to set up his secret claim of title or interest as against the claim of appellees on the note and lien securing it and covering Block 36. Appellant conceded the note and lien to be valid as to Block 37.

At the time appellee Central Loan Company obtained the note and lien executed by E. E. Thornton in 1931 and renewed by him in 1933, the only possible notice of appellant's secret claim of title or interest in the land was through his possession of it along with his father and mother, and after her death with the father until his death. The record title and appellant's possession are as follows:

Appellant, A. C. Thornton, and his father purchased Block 36 in controversy and the adjacent Block 37 in 1914, with partnership funds, each block containing 198 acres. The property was conveyed to E. E. Thornton who in the same year conveyed it to his wife, Mrs. Vinnie O. Thornton, as her separate property and estate. Both families immediately went into possession of the lands and placed the homestead improvements where the father lived upon Block 36, and placed some of both blocks in cultivation. In 1918 appellant left the premises with his family and moved to South Dakota, where he rented farm lands and lived with his family until January, 1929, when he returned to the land in question. There was testimony to the effect that while visiting his parents in 1926, who were then growing old and feeble, they requested him to return and take charge of the place, live with them, and that they would give him the property. A lost letter written by the mother, Mrs. Vinnie O. Thornton, to her son in 1927, was to the effect that the parents would give appellant the property immediately upon his returning and taking possession, for the purpose of caring for them in their old age. Appellant and his family, consisting of his wife and three children, returned to the premises in January, 1929, and lived in the home with the father and mother on Block 36, and cultivated that block and the adjoining Block 37. Appellant placed some more of the land in cultivation, claiming to be the manager and in charge of the property from that time until the death of his mother in 1931, and continued to manage the property until the death of his father in 1934. Meantime, however, he rented a house in a nearby town in which his family was to live and the children go to school, the wife remaining with the children part of the time in town and part of the time in the home of appellant's parents on the farm; but at all times either appellant or his wife was on the farm with the father and mother until their respective deaths. Appellant paid his poll tax at the town residence. E. E. Thornton never at any time left the premises, and the property was always his homestead until his death. There was no・evidence that appellant ever paid any rents, but at all times the property was rendered for taxes in the name of the father. The mother left a will which was probated in 1931, which gave the property to the father, and at a time when appellant claimed to be the owner of the property through the parol gift and under his partnership claim.

█ The history of the lien and note under which appellees claim shows that prior to 1931 the Central Loan Company's deed of trust covered only Block 37, which was not the homestead, and that after the death of Mrs. Vinnie O. Thornton in 1931, and while E. E. Thornton and his son and son's family were living on Block 36, which had been the homestead of E. E. Thornton since 1914, the note and deed of trust were renewed, additional funds were loaned to E. E. Thornton from time to time, and the deed of trust was extended so as to cover and include Block 36 along with Block 37 as security for the debt; and this note and lien were renewed in 1933 by E. E. Thornton, during all of which time the property was rendered for taxes in the name of E. E. Thornton; and he and appellant signed mortgages to the Federal Government for crop loans, in which it was stated that E. E. Thornton was the owner and appellant, A. C. Thornton, the tenant. This possession as testified to and admitted could have been the possession of landlord and tenant as well as under a secret ownership. While it was open, actual and notorious, it was not attended with any circumstances showing a transfer of possession from the donor to the donee in such a way that the possession itself attested that the father and mother gave the land by parol gift to the son.

█ In order to take a parol gift of land out of the statute of frauds as to third parties dealing with the record owner, the gift must be followed by possession which in itself attests the fact that such possession is intended as a delivery under the parol gift or agreement; and such possession on the part of the donee must be exclusive and adverse to the donor. Art. 3995, R.C.S.; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Mulkey v. Allen, Tex.Com.App., 36 S.W.2d 198; and Hauser v. Zook, Tex.Civ.App., 278 S.W. 518, 519, writ dismissed, wherein the court say:

"There was not shown by any testimony an exclusive possession, but one contemporaneous with that of the true owner. They were living on the place, and the most that can be said is that it was joint, and had more the appearance of landlord and tenant."

Concerning the possession required to complete a parol sale or gift of land in order to take such conveyance out of statutes of frauds similar to ours, the courts of sister states have clearly stated the rule as follows:

"Possession must be actual, open, and notorious to serve as an act of part performance, and with such publicity as attends an open transfer of possession in such a way that the fact itself attests that the parties have bargained." Muir v. Chandler, 16 N. D. 551, 113 N.W. 1038, 1039.

"The possession of real property carries with it the presumption of ownership. The defendants being in possession at the same time the plaintiff claims to have also been in possession, the presumption of ownership would be as much in their favor as it would be in favor of the plaintiff." Boese v. Childress, 83 Okl. 60, 200 P. 997, 1000.

"But to take a parol contract for the sale of land out of the statute of frauds by reason of a delivery of possession, such possession must be notorious, exclusive, and obviously in pursuance of the contract. Browne, St. Frauds, §§ 473, 474, 476. Coming to live with the owner on his land answers neither demand." Baldwin v. Squier, 31 Kan. 283, 1 P. 591.

█ We sustain appellees' counter point five, which reads: "Appellant A. C. Thornton having without objection allowed the Central Loan Company to advance moneys to E. E. Thornton under the belief that he was the sole owner of the lands involved herein, and having allowed the Administrator to act under such belief, is estopped to question the claim of said Central Loan Company or the rights of the Central National Bank of San Angelo as Administrator of the Estate of E. E. Thornton, deceased."

With respect to the issue of estoppel and in addition to the above detailed facts relating to appellant's secret claim of title or interest, the evidence was uncontroverted that appellant claimed to have moved with his family in the home of his father and mother in February, 1929, and claimed that he was thereafter until the death of both parents in control and management of both Block 36, the homestead tract, and Block 37; and that he attended to all of the business affairs of his father. Thereafter, on December 30, 1929, the father and mother conveyed Block 37 to the appellee Central Loan Company, and on the same day it conveyed the property back to the father and mother, retaining a lien to secure an indebtedness described. On May 19, 1930, E. E. Thornton again conveyed Block 37 to his

wife as her separate property. The wife died in 1931, and her will, leaving all of her property to her husband, the inventory showing Block 36 in controversy to be community property, was duly probated. After the death of the wife, E. E. Thornton executed the note and deed of trust under which appellees claim, covering Block 36. Early in 1933 E. E. Thornton filed suit against appellee Central Loan Company, attacking the validity of one deed of trust, claiming the land to be homestead, which suit was settled and subsequently in 1933 the note and deed of trust were renewed.

After 1929, and prior to his death, E. E. Thornton executed chattel mortgages to secure indebtedness for gasoline, farming implements, etc. Two chattel mortgages were executed by E. E. Thornton to the Secretary of Agriculture, signed also by appellant, one dated April 2, 1932, and one dated March 11, 1933, each stating that E. E. Thornton owned the land, and the latter stating that appellant was the tenant.

After the death of E. E. Thornton in 1934, appellant made application and was appointed temporary administrator of his estate, and listed the land in controversy as belonging to said estate. Appellant's sworn annual and final reports as temporary administrator each stated that the land in controversy belonged to E. E. Thornton's estate. In the same reports he admitted the encumbrance of the lien in favor of appellee Central Loan Company. Appellee Central National Bank was appointed permanent administrator of E. E. Thornton's estate, listed said property as belonging to said estate, approved and allowed the note and lien, which the probate court also approved and allowed.

After the death of his mother, appellant, by letter dated in November, 1931, to the Federal Land Bank, admitted that his father owned the land, and tried to buy it. His letter in 1935, after the father's death, stated that appellant had been in charge of the property since June, 1934, and after his father's death, and that thereafter he leased the property. His letter to appellee Central Loan Company, dated October 22, 1934, admitted the validity of its loan, and stated that he and his wife should be remunerated for caring for his father and mother for nearly four years. By a letter to appellee Central National Bank, dated in 1939, appellant treated the property as belonging to his father's estate.

During the time appellant claimed to have been managing the property and business of his father, appellee Central Loan Company was loaning money to E. E. Thornton, a part of which it paid on a judgment against appellant as principal and the father as surety, the judgment being for more than $2,000, but settled for a less amount.

■ No claim is made that appellee Central Loan Company had any notice of appellant's secret claim of title or interest in the land, and whatever the secret interest was as between him and his father, under the above detailed facts, he was under legal duty not to allow appellee to continue to advance money to E. E. Thornton on the strength of his record title, and he is estopped to now question the claim of the Loan Company, or the rights of the administrator of the estate of E. E. Thornton, or to set up any claim of title or interest in the land as against the note and lien under which they claim. 17 Tex.Jur., 130, § 4.

The judgment of the trial court is affirmed.

Affirmed.