**Lana Vonne SHARP et al., Petitioners,**

v.

**G. C. STACY et al., Respondents.**

**No. B–5531.**

Supreme Court of Texas.

April 7, 1976.

Sudderth, Woodley & Dudley, Keith Woodley, Comanche, for petitioners.

Turner, Seaberry & Warford, Virgil T. Seaberry, Eastland, for respondents.

SAM D. JOHNSON, Justice.

This is a suit for title and possession of land pursuant to an alleged oral agreement.

The jury findings were favorable to the plaintiffs, but the trial court entered judgment *non obstante veredicto.* The court of civil appeals affirmed. 525 S.W.2d 721. We affirm.

In 1941 Charles Henry Stacy and his wife, Maud Stacy, purchased the 160 acres of land in issue. The consideration for the conveyance was $4,240, of which $500 was paid in cash and the balance was represented by nine notes to be paid over the ensuing ten years. In 1943 Charles Henry and Maud, along with their minor children, moved onto the property and made their home there. The notes were fully paid and the vendor's lien and deed of trust released in 1944.

One of the children who moved onto the property with Charles Henry and Maud was their teen-age son, Charles Junior Stacy (Junior). Junior married in 1945 and thereafter he and his wife, Ramona, lived with his parents for one month. They then moved off of the property and to their own residence in town. The undisputed testimony is that Junior worked the land each year subsequent to his marriage with the exception of one or two years when he was disabled and arranged with one of his brothers to do the work. Junior's primary farming endeavors included growing peanuts and raising livestock. Junior paid his parents one quarter of the proceeds of the peanut crop for each year that he operated the farm. The taxes on the property were paid by Charles Henry each year while he was alive and Maud continued to make the annual tax payments thereafter.

Charles Henry, still living on the property, died intestate in 1957. His widow, Maud, continued to live on the property up to the date of trial. Junior died intestate in 1973 leaving his widow, Ramona, and three children. Subsequent to Junior's death, Maud entered into a contract to sell the land to one of Junior's nephews. Junior's wife, Ramona, and their three children then brought this suit for possession of the land pursuant to an alleged oral agreement transferring title to the property to Junior and Ramona and, alternatively, for recovery of the cost of the improvements to the property. Though originally a plaintiff, Ramona Stacy quitclaimed her interest in the property to her children shortly before the trial and at her request was dismissed from the suit. Defendants, Maud Stacy and the other surviving children of her marriage to Charles Henry Stacy, pleaded that the alleged oral agreement is unenforceable under the statute of frauds.

The terms of the alleged oral agreement under which the plaintiffs, Junior's children, claimed title to the 160-acre tract were described as follows in the plaintiffs' pleadings:

"At the time Ramona Maxine Stacy and her husband, Charles Junior Stacy, moved into possession of such land, record title to such land was in Charlie Henry Stacy and wife, Maude Stacy, and the agreement was made by and between Ramona Maxine Stacy and her husband, Charles Junior Stacy, as one party and Charlie Henry Stacy and wife, Maude Stacy, as the other party, that the said Charlie Henry Stacy and Maude Stacy would deed and convey full title and ownership of such land and premises to the said Charles Junior Stacy, husband of Ramona Maxine Stacy, if Charles Junior Stacy would assist Charlie Henry Stacy and Maude Stacy in their general farming operations and carry out and perform another agreement that had been made between Charles Junior Stacy as one party and Charlie Henry Stacy and Maude Stacy as the other party at the time that such land was purchased. Such other agreement between Charles Junior Stacy and Charlie Henry Stacy and Maude Stacy, made at the time the land was purchased, being that Charles Junior Stacy would work the land and that the money or income from the operation thereof would first be used to pay off the purchase price and only then, would any of the parties be entitled to the proceeds."

Further, according to the plaintiffs' pleadings, "Ramona Maxine Stacy and Charles Junior Stacy, fully carried out and performed each and every requirement placed

upon them under the agreement of either, or both, with Charlie Henry Stacy and wife, Maude Stacy, and in return therefor the land in question was by oral agreement transferred to them."

During the course of his work on the farm, Junior made or arranged for numerous improvements on the property which were described as follows in the plaintiffs' pleadings:

". . . the planting and cultivating of a fruit orchard, the planting and cultivation of an alfalfa field, the reclaiming by hauling sand and covering of a clay field consisting of approximately 30 acres, the removal of all rocks from a peanut field of approximately 79 acres, the construction and maintenance of a fence enclosing such property, the construction and maintenance of a 60 foot hay barn, the construction and maintenance of a 100 foot implement barn, the construction and maintenance of hog barns and pens,

. . .

". . .

". . . established coastal bermuda in fields located upon such land and constructed permanent fences and cross fences and arranged for a rock under penning around the dwelling house located upon such land, permanent corner posts, steel gates, waterways, installation of a bathroom in the house . . . ."

The plaintiffs further alleged "that the fair and reasonable cost of such improvements at the time of the making of same was the sum of $15,000.00 and that such improvements increased the value of the 160 acre tract of land by at least the sum of $15,-000.00."

All of the jury findings were favorable to the plaintiffs. The jury found (1) that Charles Henry and Maud made an oral agreement with Junior whereby Junior was to work the 160-acre tract, use the money derived therefrom to pay for the tract, and in return Charles Henry and Maud were to convey the tract to Junior, (2) that pursuant to the oral agreement Junior went into possession of the 160-acre tract, (3) that Junior worked the land and used the money

derived therefrom in paying for the land in accordance with the oral agreement, (4) that Junior made valuable improvements on the land pursuant to the oral agreement, (5) that Junior made permanent and valuable improvements in the good faith belief that the property was his own, (6) that Junior's possession of the land was exclusive and adverse to Charles Henry and Maud, (7) that Junior made permanent and valuable improvements upon the land in reliance upon the representation that such land would be given to him, and (8) that the fair and reasonable cost of such improvements was $10,000. Upon the defendants' motion for judgment *non obstante veredicto*, the trial court disregarded the jury findings and rendered judgment for the defendants.

The alleged oral agreement between Junior and his parents is clearly within the statute of frauds. Tex.Bus. & Comm.Code Ann. § 26.01(b)(4). To be resolved is whether the performance by Junior Stacy "relieves it from the operation of the statute of frauds, or, as more accurately stated, renders the contract enforcible in equity notwithstanding the statute." *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921).

*Hooks v. Bridgewater, supra,* enumerated three requirements to relieve a parol sale of land from the operation of the statute of frauds. These in brief are: (1) payment of consideration, whether in money or services; (2) possession by the transferee; and (3) making by the transferee of permanent and valuable improvements upon the land with the consent of the transferor. Each of these three elements was sharply disputed in the instant case, but in view of the jury findings we will regard not only the existence of the agreement but also the payment of consideration and making of improvements as concluded favorably to the children of Junior Stacy. The crucial question is whether Junior's possession of the land completes the three requirements and relieves the transfer from the statute of frauds.

The court of civil appeals held that Junior's possession of the land failed to meet

the requirements of *Hooks v. Bridgewater* because the evidence conclusively established that Junior's possession was not exclusive and adverse. The children of Junior Stacy now assert that in order to relieve a parol transfer of land from the statute of frauds *exclusive* possession need not be shown if the transferee's possession evidences a right of control which pertains to the status of owner. Accordingly, they contend that while Junior had joint physical possession of the farm with his parents, and after his father's death with his mother, the surrounding circumstances establish that Junior's possession of the farm was consistent with his status as owner. We must, therefore, decide whether exclusive physical possession is necessary to relieve a parol transfer of land from the statute of frauds.

*Hooks v. Bridgewater* dealt with a parol agreement whereby the donor, Davis, promised the father of the donee, Bridgewater, that at death he would leave all of his property to Bridgewater in consideration of a promise by Bridgewater's father to surrender his son's custody and control to Davis. Subsequently, the child fully performed his part of the bargain; he lived with Davis, did chores and services as needed, and was treated as Davis' son. Davis died intestate, however, and failed to leave any property to Bridgewater, after which Bridgewater filed suit to enforce the alleged parol agreement. This court held that the parol agreement, which was clearly within the statute of frauds, was not enforceable in equity because Davis never surrendered possession of the property to Bridgewater. The court wrote:

"The opinion in *Wooldridge v. Hancock,* 70 Tex. 18, 6 S.W. 818, discloses that the court had in mind those very situations where, as here, the parol agreement did not contemplate the surrender of the possession of the land in the lifetime of the owner; but it held that alone to be a sufficient reason for denying the enforcement of the agreement. The opinion declares that where an owner of land makes a verbal sale or gift of it to take effect after his death but retains the possession, no title is acquired, 'for it is essential, in case of parol gift or sale of land, that possession should accompany or follow the gift or sale; and there being no intention to part with the title—as was true of Davis—until some indefinite time in the future, *there could be no exclusive adverse possession as against the owner, which seems to be necessary in order' to ripen into a title.*" 229 S.W. 1114 at 1118. [Emphasis added.]

*Hooks v. Bridgewater* is distinguishable from the instant case which involves an alleged parol transfer of land effective during the lifetime of the transferor. Nevertheless, the court of civil appeals in the instant case apparently relied on the statement in *Hooks v. Bridgewater* that exclusive adverse possession as against the owner "seems to be necessary" to establish title under a parol agreement. The petitioners contend that the requirement of exclusive possession set forth in *Hooks v. Bridgewater* was dicta because in that case the transferor never surrendered ownership and control to the transferee.

The cases in this state dealing with parol transfers of real estate have not established exclusive physical possession by the transferee as an absolute requirement for relief from the statute of frauds. In several of the cases courts have regarded the requirement of exclusive physical possession as a significant or deciding factor. *Mulkey v. Allen,* 36 S.W.2d 198 (Tex.Com.App.1931); *Mueller v. Banks,* 300 S.W.2d 762 (Tex.Civ. App.—San Antonio 1957, writ ref'd n. r. e.); *Sims v. Duncan,* 195 S.W.2d 156 (Tex.Civ. App.—Galveston 1946, writ ref'd n. r. e.); *Hauser v. Zook,* 278 S.W. 518 (Tex.Civ.App. —San Antonio 1925, writ dism'd). However, in each of these cases the parol agreement provided for the transfer of the land at some future date and the transferor never actually surrendered ownership and control of the land to the transferee. In this respect these cases are not distinguishable from *Hooks v. Bridgewater.*

The result in *Pappas v. Gounaris,* 158 Tex. 355, 311 S.W.2d 644 (1958), was also dictated by *Hooks v. Bridgewater.* In *Pap-*

*pas* a partnership was formed whereby one partner agreed to provide a tract of land and the other partner agreed to furnish funds with which to erect a building thereon. The controlling issue in the case was whether the tract of land in question became partnership property pursuant to an alleged parol transfer, and this court held that the parol transfer to the partnership was condemned by the statute of frauds. Although this court stated that the transferee's possession must be exclusive and adverse to relieve such a parol transfer from the statute of frauds, it is clear that the court was not referring to physical possession of the land. The basis for the decision in *Pappas* was that the transferor never fully relinquished his control over the property.

Some courts have refused to enforce parol transfers of land *in praesenti* because the transferors remained on the property after allegedly surrendering possession and title to the transferees. *Thornton v. Central Loan Co.,* 164 S.W.2d 248 (Tex.Civ.App. —Austin 1942, writ ref'd); *Leverett v. Leverett,* 59 S.W.2d 252 (Tex.Civ.App.—Texarkana 1933, writ ref'd); *Johnican v. Tomasino,* 248 S.W.2d 207 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.). In *Thornton,* which closely parallels the instant case, a son was requested by his parents to return to their farm and manage it, in return for which the parents promised to immediately transfer the property to the son. Pursuant to this parol agreement, the son returned to Texas with his family and undertook management of his parents' farm. The parents continued to live on the farm. At the same time, the son rented a house in a nearby town in which his family was to live, but either he or his wife was always on the farm with his parents, whom they cared for up until the time of the parents' deaths. There was no evidence that the son ever paid any rent to his parents. After reviewing the evidence, the court concluded:

> "This possession as testified to and admitted could have been the possession of landlord and tenant as well as under a secret ownership. While it was open, actual and notorious, *it was not attended with any circumstances showing a transfer of possession from the donor to the donee* in such a way that the possession itself attested that the father and mother gave the land by parol gift to the son." 164 S.W.2d 248 at 251. [Emphasis added.]

While the *Thornton* court echoed the statement from *Hooks v. Bridgewater* that a donee's possession must be exclusive, the basis for the court's holding was the absence of any circumstances indicating a surrender of ownership and control by the donor.

In *Leverett* the court reached a similar conclusion with respect to a parol transfer of land from one brother to another where the brothers owned interests in the land in question as co-tenants. After holding that "the possession must be referable to the claim of parol sale or gift, and not consistent with any previous right of possession of the grantee in the property" the court concluded that the possession of the brother who claimed under the alleged parol transfer of land was at all times consistent with his status of co-tenant. 59 S.W.2d 252 at 255. The evidence therefore failed to show a surrender of ownership and control by one co-tenant to the other co-tenant. Similarly, in *Johnican,* where the transferors and transferees lived together in the same house on the premises, it was held that there was an absence of circumstances indicating a surrender of ownership and control by the transferors. Furthermore, the *Johnican* court emphasized that there was no evidence of any improvements made by the transferees during the lifetime of the transferors. Thus, the results in *Thornton, Leverett,* and *Johnican* were based upon the transferees' failure to show any surrender of ownership and control by the transferors rather than upon an absolute requirement of exclusive physical possession.

Several cases have held that joint physical possession of the land by the transferor and transferee does not preclude relief from the statute of frauds where the transferee's possession clearly evidenced a surrender of ownership and control by the transferor.

*Davis v. Douglas,* 15 S.W.2d 232 (Tex.Com. App.1929, holding approved); *Scott v. Cliett,* 213 S.W.2d 562 (Tex.Civ.App.—Galveston 1948, no writ); *Lehman v. Barry,* 126 S.W.2d 499 (Tex.Civ.App.—Waco 1939, writ dism'd jdgmt. cor.). Each of these cases involved a parol transfer of land *in praesenti;* consequently, *Hooks v. Bridgewater* was not controlling. In the leading case, *Davis,* a parol gift of land was made which became effective during the lifetime of the donor, an elderly lady named Millie. Immediately following the gift the donee, Josephine, and her husband, Monk, moved into the dwelling on the land and lived there along with Millie until her death. Permanent and valuable improvements were made on the land by Josephine and Monk while Millie was still alive. The court held that "[t]he possession shown to have been taken and held under the gift is such, it is thought, as to meet the second requirement of the above rule, notwithstanding the fact that Millie lived on the premises with Josephine and Monk." 15 S.W.2d 232 at 233.

This court, in *Dawson v. Tumlinson,* 150 Tex. 451, 242 S.W.2d 191 (1951), clarified and elaborated upon the quality of possession required to relieve a parol transfer of land from the statute of frauds. In that case the donor, an elderly lady named Jane Davis, made a present gift of the property on which her residence was located to her neighbors, Len and Lena Claiborne. The gift was made in return for the Claibornes' promise to care for Jane Davis during the remainder of her life. The Claibornes continued to reside on their own property but regularly performed chores in Jane Davis' house, including cleaning, taking meals, and providing firewood until Jane Davis' death. This court held that the Claibornes' possession was not adequate to relieve the parol gift from the statute of frauds. In so holding, the court stated that the possession required to relieve a parol transfer from the statute of frauds must evidence a "right of control which pertains to the status of own-

er" or be "possession which in itself attests the fact that such possession is intended as a delivery under the parol gift." 242 S.W.2d 191 at 194. In concluding that the Claibornes' possession of Jane Davis' property did not satisfy the above criteria, this court looked to the improvements made by the Claibornes, the extent of the Claibornes' management of the property, and other circumstances relative to the Claibornes' possession.

■ This court does not adopt exclusive physical possession as an absolute requirement in order to relieve a parol transfer of land from the statute of frauds. Such a requirement would create arbitrary results in difficult cases and frustrate the equitable rule of *Hooks v. Bridgewater* where "nonenforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud." 229 S.W. 1114 at 1116. The instant case must be decided upon the broad principles announced in *Dawson.* In determining whether Junior's possession of the farm satisfied the criteria set forth in *Dawson* we consider only the circumstances relative to his possession which evidence a surrender of ownership and control by Junior's parents. Circumstances that may be explained quite separate and apart from a surrender of ownership and control by Junior's parents will not be considered.

We conclude that Junior's possession of his parents' farm did not evidence a surrender by his parents of their ownership and control of the property. The jury finding that Junior's possession of the farm was adverse to his parents was either immaterial [1] or there was no evidence to support it.

■ The fact that each year Junior paid his parents one quarter of the proceeds from the peanut crop is not unequivocally referable [2] to the status of ownership, and more strongly suggests the existence of a lease or tenant farming arrangement. Furthermore, it appears that Junior paid one quarter of the proceeds to his parents every

---

1. The charge of the court did not define the term "adverse."

2. *See Francis v. Thomas,* 129 Tex. 579, 106 S.W.2d 257 (1937).

year that he operated the farm. Presumably, if Junior had been buying the land he would at some point have paid off his indebtedness and ceased making the payments. The substantial and permanent improvements that Junior made or arranged for upon the land might be considered referable to Junior's status as owner, except that many if not most of the improvements were paid for by Junior's parents. The making of improvements by a transferee does not evidence a surrender of ownership and control if the transferor is also making improvements or paying for them. Neither does the fact that Junior farmed the land exclusively evidence a surrender of ownership and control because his parents continued to live on the farm. Finally, testimony that the land was referred to as "Junior's place" or that Junior's parents stated on occasion that the farm belonged to Junior did not constitute any evidence that Junior occupied the farm as owner. This is exactly the type of evidence that *Hooks v. Bridgewater* meant to exclude from consideration. The "reason for the requirement of possession is that without it the existence of the contract rests altogether in parol evidence, which common experience has shown to be too unstable and uncertain to be permitted to work a divestiture of title to real property." *Hooks v. Bridgewater, supra,* at 1117.

The remaining issue is whether the court of civil appeals properly denied Junior Stacy's children any recovery for the improvements that Junior made on the farm. In this regard the jury found that Junior placed permanent and valuable improvements on the farm in the good faith belief that the property was his own, that in placing such improvements on the farm Junior relied upon the representation that the land would be given to him, and that the fair and reasonable cost of such improvements was $10,000. There was, however, no special issue inquiring about the enhancement in the value of the farm due to the improvements. In denying recovery for the improvements the court of civil appeals held that Junior's children were entitled to recover for the improvements only to the extent that they enhanced the value of the land. Accordingly, the court concluded that the jury finding regarding the cost of the improvements was immaterial and that Junior's children waived their right to recover for the enhancement in value of the farm by failure to submit a proper special issue. We agree.

The principle is well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation therefor. The measure of compensation to the claimant is not the original cost of the improvements, but the enhancement in value of the land by reason of the improvements. *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935); *Tashnek v. Hefner,* 282 S.W.2d 298 (Tex.Civ.App.—Galveston 1955, writ ref'd n. r. e.); Annot., 24 A.L.R.2d 11, 31; 42 C.J.S. Improvements § 11, at 446–49. The children of Junior Stacy, having failed to secure a jury finding on the issue as to the enhancement in value of the farm by virtue of the improvements are precluded from recovering compensation for the improvements. Tex.R.Civ.P. 279; *Lindsay v. Clayman,* 151 Tex. 593, 254 S.W.2d 777 (1952).

In summary, we hold that the alleged parol transfer of the property from Charles Henry and Maud Stacy to their son, Junior, was condemned by the statute of frauds and that Junior never acquired any interest in the farm pursuant to said parol transfer. We further hold that Junior's children are not entitled to any compensation for the improvements placed on the farm by their father.

The judgments of the trial court and the court of civil appeals are affirmed.