Guadalupe **HERNANDEZ, et al., Appellants,**

v.

**ALTA VERDE INDUSTRIES, INC., A Texas Corporation, Appellee.**

No. 16930.

Court of Appeals of Texas, San Antonio.

Sept. 7, 1983.

Rehearing Denied Feb. 27, 1984.

Richard O. Gonzales, Del Rio, for appellants.

Taylor Nichols, Uvalde, for appellee.

Before CADENA, C.J., and ESQUIVEL and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a judgment in a trespass to title suit. At the close of the evidentiary portion of the trial, the trial court instructed the jury to return a verdict in favor of appellee. Appellants assert title by way of an oral gift and the statute of limitations; alternatively, damages for constructing improvements on the property.

█ Since judgment was based on the trial court's instructed verdict, we must ascertain if there is any evidence of probative force to raise a fact issue on the material issues. In reaching this determination it is our responsibility to consider all of the evidence in its most favorable light in support of the appellant's position and disregard all contrary evidence and inferences. *Henderson v. Travelers Insurance Co.,* 544 S.W.2d 649 (Tex.1976). Using that as our guide, we narrate the facts most helpful to appellant's position.

Appellant, Guadalupe Hernandez is the widow of Nazario Hernandez. Appellants, Aurora Hernandez, Manadora Hernandez, Manuela Hernandez Rodriguez, Helena Angelina Hernandez Ortiz, and Guadalupe Hernandez Farela, are descendants of Nazario Hernandez. In 1925, Nazario Hernandez and wife obtained employment on a ranch in Quemado, Maverick County, Texas, owned by the Lehmann family. The Hernandez's, and other employees of the Lehmanns, were permitted to live on a portion of the land situated on the Lehmann Ranch. During the depression, all of the employees except the Hernandez's left the ranch to find employment elsewhere. By the year 1940, the Hernandez family was the only family working for the Lehmann's and, they alone occupied the land which had been reserved for the Lehmann employees, which land consisted of approximately three acres.

The ranch was managed for the Lehmann family by Anton Lehmann. Anton asserted total control over the ranch's operation and, generally speaking, ran the ranch as if he owned it. Actually he only owned approximately a one-seventh (1/7) undivided interest. Sometime around the year 1947 Nazario told Anton that he and his family were going to leave the ranch as he was not being paid a salary and needed to go elsewhere to make a living. This conversation took place on the front porch of Anton's home. Anton stated that he did not want Nazario and his family to leave,

and if they would stay, he would give them the land upon which they were living. Anthony Lehmann, Anton's nephew, also an owner of an undivided interest of the Lehmann Ranch, was present at the time this conversation took place and testified to the event at the trial. Anthony also testified that sometime during the 1950's Anton became ill and it became necessary, from time-to-time, to drive Anton from Del Rio to San Antonio to visit a physician. During one of the returning trips, when Anton was feeling poorly, he told his nephew that if he died, the nephew must make sure that Nazario kept his place. Nazario's son, Armador Hernandez, in response to a question asked by appellee's attorney, stated that in 1950 or 1951, Mr. Anton Lehmann brought a man who represented a finance company from Crystal City on the property which is the subject of this lawsuit, showed the finance company man their house, and said that he was not selling or mortgaging that portion of the ranch in that it belonged to Nazario and that Anton Lehmann did not want him "to bother him". Nazario, with his wife and children, lived there from 1924 or 1925 until his death which occurred in 1971, and the Hernandez family continued to live on the premises through the date of the trial. The appellants cultivated a portion of the three acre tract, keeping the produce such as onions, tomatoes, and lettuce for their own use. They planted fruit trees and raised, for their own use, chickens and hogs. They dug a water well and kept the fences and the house which had been furnished them in repair. In general, they exercised control over the three acre tract. At no time did anyone interfere with their occupancy or attempt to evict them.

On April 15, 1969, Anton Lehmann, et al, executed a deed to the Winter Garden Production Credit Company, which deed contained a reservation which states, in part,

Grantors also reserve unto themselves ... a tenant house now occupied by grantors' employee that is also near highway 277, which now exists on the ground, but upon the death of both Anton Lehmann and Katherine Lehmann, this reservation shall immediately terminate, and cease and shall become and be of no further force and effect.

Appellants testified that they were not aware of the deed nor the reservation. Anton Lehmann died in 1970. In February 1974, Mr. Leon Miller purchased the property from Winter Garden Production Credit Association, and he, in turn, conveyed it to appellee. Mr. Miller testified that he was aware that the Hernandez's were living on the property prior to his purchase from Winter Garden, but that sometime during the spring of 1974 he became aware that appellants were starting construction on a new house. He stated that upon his investigation of the property he found "a batter board up and a little concrete around a footing." It appeared to him to be the start of a foundation for a house. He testified that he warned the Hernandez's not to construct a new house. The Hernandez's testified that, due to financial restraints, they had built the house piecemeal, and that actually they had started on the foundation prior to 1974. Subsequent to this conversation, the Hernandez's completed a home consisting of five bedrooms, a kitchen and a bath which cost them between $20,000 to $30,000. The Hernandez's paid no taxes and never received a deed from the Lehmann's.

 Our Supreme Court in *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921), reaffirmed the rule that to remove a parol sale of land from the operation of the statute of frauds, TEX.REV.CIV.STAT. ANN. art. 1288 (Vernon 1980), it is necessary that each of the following elements be established:

(1) Payment of the consideration, whether it be in money or services;

(2) Possession by the vendee; and

(3) The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.

Each of these three elements is indispensable, and they must all exist. *Id.,* 229 S.W. at 1116. A parol gift will also be upheld when the gift has been clearly established provided the donee takes actual possession of the land and, relying upon the gift, makes valuable improvements with the knowledge of the donor. *Patterson v. Hall,* 439 S.W.2d 140 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.).

■ The evidence is uncontroverted that the Hernandez's were in possession of the land in question. Appellee, however, complains of the evidence introduced to show the gift, contending that the testimony of Arthur Lehmann relating Anton Lehmann's statement to give the property to Nazario Hernandez was the "rankest kind of hearsay". The testimony of a third person (Arthur Lehmann) relating a statement made by a donor (Anton Lehmann) is admissible as proof of a decedent's intent to make a gift of property. *Wooldridge v. Hancock,* 70 Tex. 18, 6 S.W. 818 (1888); *Peterson v. Martin,* 69 S.W.2d 484 (Tex. Civ.App.—Texarkana 1934, writ dism'd); 27 TEX.JUR.2D *Gifts* § 53.

Additionally, appellee asserts Anton's statement is a derogation of Anton's title, and is not competent evidence against his grantee or persons claiming under the grantee.

■ The parties stipulated that Anton and Katherine Lehmann were their common source of title. Appellee contends that this stipulation precluded appellant's introduction of any testimony of a purported gift from Anton Lehmann prior to the year 1969, the date of the Anton and Katherine Lehmann deed to Winter Garden. We disagree. This admission did not preclude appellants from claiming under any claim they might assert such as gift or by adverse possession. *Krasa v. Derrico,* 193 S.W.2d 891 (Tex.Civ.App.—San Antonio 1946, no writ); 56 TEX.JUR.2D, *Trespass to Try Title,* § 30.

■ Appellees also aver that evidence introduced to support the oral gift violates the parol evidence rule. The basis of this contention is that Anton and Katherine Lehmann executed a deed in 1969 to Winter Garden which expressly reserved unto the Lehmann's and Hernandez's a right to live on the land until the death of the last survivor of Anton and Katherine. The deed, being clear in its intention, repudiated any notion of a gift, and absent ambiguity, accident, fraud, or mutual mistake, parol evidence is inadmissible as the intention of the parties must be determined from the deed itself. Certainly, that is the general principle of sound law between the grantor and the grantee in a deed, but it has no application in this instance. Hernandez, a stranger to the deed, was not bound by its terms. *Berryman v. Norfleet,* 41 S.W.2d 722, 727 (Tex.Civ.App.—Amarillo 1931, writ dism'd).

We now consider the evidence introduced to show the improvements. Although there was evidence as to appellants cultivating the land and repairing fences and the digging of a well, there was no evidence as to when these acts occurred. Anton Lehmann died in 1970. The evidence introduced established that the foundation of the home built by the Hernandez's was started in 1974. Manuella Rodriguez, a daughter of Nazario Hernandez, did testify that they commenced construction in 1966, but it is obvious from her testimony that she was confused as to the date. Her testimony is as follows:

Q: When did they build this house?

A: In 1966. We were building it when he went to stop the construction.

Q: 1966 and, the answer is when he went to stop the construction and pointing to Mr. Miller?

A: Yes.

Q: Okay. Do you know that Mr. Miller did not buy this property until 1974?

A: I thought they said he bought it in 1979.

The uncontroverted testimony of Armador Hernandez, son of Nazario Hernandez, was that construction started in 1973 or 1974 and Leon Miller testified that he inspected the premises in 1974 and work had just

started on the foundation of the house. The lawsuit was filed in 1977.

The Supreme Court in *Wooldridge v. Hancock, supra,* 6 S.W. at 822, stated:

> [I]t is necessary to the validity of a parol sale or gift of land in Texas, however the rule may be elsewhere, that possession be delivered and substantial and valuable improvements made. *with [sic] the consent or knowledge of the vendor,* upon the faith of such gift or sale; and that the mere taking possession or making improvements of insignificant value is not sufficient.... [Emphasis ours.]

*See also Hooks v. Bridgewater, supra; Patterson v. Hall,* 439 S.W.2d 140 (Tex.Civ. App.—Austin 1969, writ ref'd n.r.e.).

■ The necessity of showing substantial improvements during the life on a donor is a sound one. Especially, as in this instance, where there had existed a landlord-tenant relationship between the parties. Without the extrinsic evidence of substantial improvements prior to the death of the donor, the proof establishing the donor's intent to give would, to a great extent, be rendered solely on parol evidence.

■ The evidence fails to establish that substantial improvements were erected on the property during the life of either Anton or Katherine Lehmann. Appellants' first ground of error is overruled.

■ Alternatively, appellants contend, either in their capacity as co-tenants in title with the remaining Lehmann family, or as tenants in a landlord-tenant relationship, the trial court erred in granting appellees' motion for instructed verdict as there was evidence introduced of adverse possession. Since we have held that appellees have not introduced evidence to show an oral conveyance by Anton Lehmann, appellants could not be co-tenants in title with the remaining Lehmann family. Appellants pled title under the ten-year statute of limitations. TEX.REV.CIV.STAT.ANN. art. 5510 (Vernon 1958). Our Supreme Court in *Brohlin v. McMinn,* 161 Tex. 319, 341 S.W.2d 420, 422 (1960), stated:

As indicated by the ten-year statute, it is the policy of this state to give effect to an adverse holding, even by a naked possessor, when the adverse holding measures up to the statutory requirements so that title by limitation may be acquired by one who has neither title, color of title, nor muniment of title duly registered. The claimant is required only to have had the exclusive, peaceful and adverse possession of the land under a claim of right for not less than ten years.

The Texas Commission of Appeals in *Houk v. Kirby Petroleum Co.,* 65 S.W.2d 496, 499 (Tex.Com.App.1933), in considering a plea of adverse possession asserted by a tenant, stated the following:

> The law of this state exacts from tenants the exercise of the utmost good faith in carrying out the tenancy relationship once established.... Nothing short of an open, positive, and visible repudiation of that trust will suffice to start the running of the statute of limitation.... [W]here the relation of tenant and landlord is once established, it takes a plain, positive, and clear-cut repudiation to break that relationship, and until that is done, the tenant is estopped to deny the title of the owner.

*See also Achille v. Baird,* 361 S.W.2d 439 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Again reviewing only the evidence favorable to appellant and disregarding all evidence to the contrary, we find that appellants have not met their burden of proof. The appellants introduced evidence that they cultivated a portion of the land, planted fruit trees, and even dug a well, but they never established whether that occurred during the tenant-landlord relationship or after it terminated. There was no evidence as to who paid for the repairing of the fences or the excavation of the well. We can find no evidence where appellants made a plain, positive, visible repudiation of the landlord-tenant relationship. We overrule appellants' point of error two.

■ The appellants' last point of error complains of the instructed verdict, contending there was evidence of valuable and

permanent improvements that should have been submitted to the jury. We find no error in the trial court refusing to submit an issue on damages. The only evidence introduced by appellant which related to damages came from Manuella Rodriguez, daughter of Nazario Hernandez. That testimony was directed at the cost of the house that had been constructed after the death of Mr. Lehmann and, save the placing of batter boards and cement for the foundation, was erected subsequent to their notification by Leon Miller that he was owner of the property and advised them to cease construction. In an answer to a question as to how much did the house cost, she stated $20,000 or $30,000 more or less. Our Supreme Court in *Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex.1976), held that:

> A person who in *good faith* makes improvements upon property owned by another is entitled to compensation therefore. The measure of compensation to the claimant is not the original cost of the improvements, but enhancement in value of the land by reason of the improvements. [Emphasis ours.]

Without reaching the point of whether the Hernandez's could act in good faith after receiving notice from Miller as to his claim, we hold that the evidence submitted was inadequate to support a proper special issue on the damage question. The judgment of the trial court is affirmed.