

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-12-00043-CV
_____

IN THE MATTER OF THE MARRIAGE OF
CHRISTIE ANNETTE SCOTT AND
WILLIAM EDGAR SCOTT, JR.

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 80304

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

During their marriage, William Edgar Scott, Jr., and Christie Annette Scott moved into a house titled in the name of his father, William Edgar Scott, Sr.,[1] and made regular payments for thirteen years on Senior's mortgage on the property. During that time, they also made improvements to the property. The agreement under which they did those things was oral. Depending on whether you believed Senior and Junior, on one side, or Christie, on the other, the agreement was either a rental or a purchase by Junior and Christie. Christie sued, alleging fraud on the community based on Senior's refusal to honor an oral contract to sell the house to Christie and Junior. The trial court believed that the arrangement was a sale and entered judgment accordingly, ordering Senior to transfer title to the property so it could be sold and the proceeds divided in Junior and Christie's divorce. On appeal, Junior and Senior challenge the legal and factual sufficiency[2] of the evidence to support the trial court's finding of partial performance as the exception to the statute of frauds. We affirm because legally and factually sufficient evidence demonstrates that Junior and Christie (1) paid consideration, (2) possessed the property, and (3) made valuable improvements to the property.

Junior and Senior argue Christie failed to introduce sufficient evidence to support the elements of partial performance. Specifically, they contend there is insufficient evidence that any consideration was paid for the house, insufficient evidence of possession, and insufficient

---

[1]For clarity, we will refer to William Edgar Scott, Jr., as Junior and to his father as Senior.

[2]A motion for new trial is not required to preserve factual sufficiency in a bench trial. TEX. R. APP. P. 33.1(d); TEX. R. CIV. P. 324(a), (b) ("In a nonjury case, a complaint regarding legal or factual sufficiency . . . may be made for the first time on appeal. . . ." ).

evidence that valuable improvements were made. Although Junior and Senior concede Junior and Christie resided in the house for thirteen years, they claim it was as renters and argue that the possession was consistent with merely renting the house. Despite evidence of significant improvements, Junior and Senior argue these improvements were part of the rental agreement.

The evidence is legally insufficient if there is (1) a complete absence of evidence establishing a vital fact, (2) the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, (3) there is less than a scintilla of evidence to prove the vital fact, or (4) the opposite of the vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.*, *Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In a legal sufficiency analysis, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When reviewing a record for factual sufficiency, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). When the party without the burden of proof

3

on a fact issue complains of factual insufficiency, that party must show that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of the credible evidence contrary to the finding. *Clayton v. Wisener*, 190 S.W.3d 685, 692 (Tex. App.—Tyler 2005, no pet.); *see Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

In general, the statute of frauds prohibits the enforcement of oral real estate contracts. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009). Partial performance, though, is an exception to the statute of frauds. *Bookout v. Bookout*, 165 S.W.3d 904, 907 (Tex. App.—Texarkana 2005, no pet.); *Exxon Corp. v. Breezevale*, *Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). There are three requirements for enforcement of an oral real estate contract:

> (1) payment of the consideration; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.

*Gnerer v. Johnson*, 227 S.W.3d 385, 391 (Tex. App.—Texarkana 2007, no pet.); *see Sharp v. Stacy*, 535 S.W.2d 345, 347 (Tex. 1976).

Bradley Scott, Junior's brother, testified that he lived in the house for three years before Junior and Christie moved in. When Bradley left the military and moved back to East Texas, the house was purchased for Bradley to live in. Bradley testified that he provided a "$9,000,

4

$10,000" down-payment, but the mortgage was financed in Senior's name.[3] When asked why he left the house, Bradley testified:

> [Bradley]: My dad and I had a misunder -- my -- my dad and I had a disagreement.
>
> [Christie's Attorney]: Okay.
>
> [Bradley]: I -- I had -- after my divorce was final I was supposed to have it changed over into my name where I could continue in the house and --
>
> [Christie's Attorney]: And he refused?
>
> [Bradley]: When I got to the bank to get the paperwork done my dad went in to shape the -- to come and sign it, and he wouldn't sign it.
>
> [Christie's Attorney]: Okay. Why did you leave the house?
>
> [Bradley]: I didn't want to -- didn't want to live life like that anymore. Just didn't want my kids to be -- and my wife to be exposed or -- or have to put up with that anymore. There was -- there was strings attached that I didn't know would be there that was held over my head, so I just -- I just made the choice to just start over and -- and walk away.

When Senior refused to appear for closing, Bradley rented a truck that afternoon, moved out, and has not spoken "20 words" to Senior since.

*(1)*      *Sufficient Evidence Demonstrates that Junior and Christie Paid Consideration*

Christie testified that, after Bradley moved out, she and Junior made an oral agreement to purchase the house from Senior. Christie testified that, one evening, Senior telephoned:

> and said that [Junior's] brother Brad had just up and left the house, and he asked us if we wanted -- if we wanted it, we could buy it. And so we went out and looked at it the next day, and we talked about it for a week, and we decided that if

---

[3]The record contains a vendor's lien for $9,000.00 retained by Larry Clark when he sold the house to Senior. Bradley later testified that this is how the down payment was recorded, that he wrote a check to Clark for $9,000.00, and that he wrote a check for $1,000.00 to the title company.

5

it was going to be ours that we would go ahead and do it instead of renting all the time because the house was going to be ours.

Christie testified that she and Junior had lived in the house and had made all of the mortgage payments on the house since 1998. According to Christie, she had filled out paperwork at the Bank to transfer title "several times," but there was "always some reason" Junior or Senior could not come to the bank to sign the paperwork.

Senior and Junior argue that the record fails to contain any evidence that consideration was paid for the oral contract to purchase, citing *Hooks v. Bridgewater*, 229 S.W. 1114, 1116 (Tex. 1921) ("Payment of the consideration, whether it be in money or services . . ."). While *Hooks* assumes that the consideration will be monetary, we do not interpret it as restricting consideration to monetary payments. It is well established that, in general, the assumption of a debt can be sufficient consideration. *See*, *e.g.*, *Wisdom v. Smith*, 209 S.W.2d 164, 168 (Tex. 1948); *Shenandoah Assocs. v. J & K Props.*, *Inc.*, 741 S.W.2d 470, 499 (Tex. App.—Dallas 1987, writ denied). We are not aware of any reason there should be a special rule requiring monetary consideration for the partial performance exception.

The record contains evidence that the agreed consideration was the assumption of Senior's mortgage payments. Christie testified that Senior offered to sell her and Junior the house shortly after Bradley left and that part of the agreement was for them to make the mortgage payments. The mortgage papers establish that Senior was personally liable for the

mortgage payments.[4]  Senior testified his only income was his Social Security payments and that he "trade[s] around a little bit."  The trial court made the following finding of fact:

> As consideration for the oral agreement to sell them the real property described in Exhibit "A", William Edgar Scott, Jr. and Christie Annette Scott agreed to make the note payments to Peoples's [sic] National Bank on the note on which William Edgar Scott, Sr. was obligated and which was secured by a deed of trust on the real property described in Exhibit "A."

A trier of fact is permitted to make reasonable deductions from the record.  *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 306 (Tex. 1988).  The trial court could have reasonably concluded that the assumption of the mortgage payments was the consideration accepted by Senior.  The trial court's conclusion that the assumption of rent was sufficient consideration is supported by legally and factually sufficient evidence.[5]

*(2)      Sufficient Evidence Demonstrates that Junior and Christie Possessed the Property*

The second argument made by Junior and Senior is that evidence concerning the possession of the property is not inconsistent with Junior and Christie merely being renters.  We have not been provided with any authority that the possession must be adverse or hostile to the

---

[4]Junior and Senior argue, "Sub-paragraph H of the Assignment of Rents required all rents from the property to be paid directly to the mortgage company, Peoples National Bank."  Although Senior testified the Assignment of Rents requires the rent payments to be paid to the Bank, the trial court was not bound by Senior's legal conclusion.  The Assignment of Rents took effect only upon a default by Senior.  The Assignment provides, "However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."  A reasonable person could have disregarded Senior's legal conclusion that rental payments had to be made directly to the Bank.

[5]We further note that an oral gift of land will be enforced "when the gift has been clearly established provided the donee takes actual possession of the land and, relying upon the gift, makes valuable improvements with the knowledge of the donor."  *Hernandez v. Alta Verde Indus., Inc.*, 666 S.W.2d 499, 503 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.).

7

claim of Senior in order to satisfy the partial performance requirement of possession.[6] The law requires just possession. *See Sharp*, 535 S.W.2d at 347. It is uncontested that Junior and Christie exercised exclusive possession of the house for thirteen years. The evidence of possession is legally and factually sufficient.

*(3)*     *Sufficient Evidence Demonstrates that Junior and Christie Made Valuable Improvements to the Property*

Finally, Junior and Senior argue that the evidence is insufficient to support a conclusion that Junior and Christie made valuable improvements. According to Junior and Senior, the improvements that were made to the house were made on behalf of Senior, and Senior paid for the materials. The fact that Junior and Christie personally performed some of the installation, according to Junior and Senior, is merely a reflection of the tenants being relatives of the landlord.

There is more than a scintilla of evidence that Junior and Christie performed valuable improvements with the knowledge of Senior. Christie testified that she and Junior made the following improvements:

> We did new tile floors. We did the laminate flooring. Redid the bathroom -- both the bathrooms. We took out a wall to make it bigger in the living -- in the kitchen area. I'm sorry. I've redone the kitchen cabinets. I've stripped them all down back to their natural. I've painted all the walls. We added on a back porch. We put in a swimming pool with a deck on it. We put a pipe fence around the front going down the side and coming up the back of the yard and coming up the side, and then built a carport, and then he built a shop.

---

[6]There are no allegations of adverse possession.

8

Linda Cheney, Christie's sister, testified Christie and Junior had installed a new roof, installed tile and laminate wood flooring, and remodeled the kitchen. Junior admitted a new roof had been installed, a wall removed, and some work had been done in the bathrooms since they had moved into the house. The evidence is legally sufficient.

Certainly, the record also contains evidence supporting Junior and Senior's arguments. Junior testified he and Christie were renting the house and denied that they owned the house. Junior testified that, because he was out of work, he contributed labor to the improvements to the house. Junior denied borrowing money from Christie's sister to install the new metal roof and testified that the insurance money was sufficient to pay for the new roof. Senior testified that he paid for all the materials used to make the improvements either with insurance money or his personal funds. Senior testified he charged Junior and Christie a reduced rent "because I was trying to help Christie and [Junior], and that's the only reason I done it." Senior specifically denied charging a reduced rent because Junior was performing work on the house.[7] Senior testified he built the shop before Junior and Christie moved in.

_____

[7]In the Appellants' brief, counsel argues:

> Scott, Jr. was often out of work and could not afford to pay for repairs, so he provided his labor and some materials that he could salvage to assist his father. Scott, Sr. took that into account and never raised the rent on his son because of the labor he provided in assisting in the repairs and improvements to the property.

The record contains the following testimony:

> Q.      [Mr. Tidwell]:    And does the reduced rental, does it have any relation to the fact that Mr. Scott was doing work out there putting up a barn --
> A.      [Senior]:          No.
> Q.      -- putting up a -- a roof?  Do you understand what I'm asking?
> A.      He -- William done that for me, I guess.  That's all I know. . . .

The record also contains evidence contradicting Junior and Senior's testimony, even beyond Christie's testimony. Bobby Allen, Junior and Christie's tax preparer, testified that Junior and Christie deducted the interest paid through the mortgage payments on their 2009 and 2010 tax returns. Although Junior testified that Christie provided the information to Allen, Junior admitted he was present when the taxes were prepared. Allen answered, "Yes," when asked, "So, the Scott -- William Scott actually came into your office, sat down, and signed this 8453?" Senior admitted he had not been claiming rental income on his tax return.

Cheney testified that she sold Christie and Junior the tile to redo the bathroom flooring. Cheney further testified that she did not know who laid the tile but she knew Christie did the grouting. Christie testified that her sister, Cindy Daniel, loaned Christie and Junior $3,000.00 to pay for the costs of the new roof that exceeded the insurance money. A copy of a $3,000.00 check from Daniel was introduced into the evidence.

Although Junior and Senior testified a rental relationship existed, the trial court could have found their testimony not to be credible. The trial court, as the finder of fact, is the sole judge of credibility. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The record merely indicates a factual dispute which the trial court resolved. The great weight and preponderance of the evidence does not indicate the trial court's decision was clearly wrong or manifestly unjust. The evidence is factually sufficient.

Since the record contains legally and factually sufficient evidence to support each of the

three requirements of the partial-performance exception, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     October 31, 2012
Date Decided:       November 14, 2012